UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID L. JAMERSON,

        Plaintiff,                       Case No. 2:08-cv-284

v.                                            HON. ROBERT HOLMES BELL

PATRICIA L. CARUSO, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. On November 21, 2008, this Court dismissed all of Plaintiff's claims except his equal protection claims against Defendants Lieutenant Unknown Taylor, Resident Unit Manager Nancy Phillipson, and Resident Unit Officer Unknown Stasewich. On November 12, 2008, Defendants Stasewich, Phillipson, and Taylor filed a motion for summary judgment (docket #13) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket # 17) on or about December 10, 2009. Upon review, I recommend that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be granted.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable

jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Marquette Branch Prison (MBP). Plaintiff asserts that Defendants Taylor, Phillipson, and Stasewich violated his equal protections rights while Plaintiff was being housed at the Alger Correctional Facility (LMF). Plaintiff seeks damages and equitable relief.[1]

Plaintiff, who is black, claims that Defendants Stasewich, Phillipson, and Taylor, who are white, denied him his meal trays on August 12, 2006, because he attempted to assist another black prisoner in filing a grievance. Plaintiff filed a grievance on August 18, 2006, alleging the following:

> Hostage David L. Jamerson #13890 is Afro-American under the care of an all caucasian prison staff. Warden David Bergh; Director Patricia L. Caruso, both acting under color of state law, is [sic] legally responsible for the unconstitutional conduct by RUO Stasewich.
>
> On August 12, 2006 Jamerson told inmate Brock #350671 that he would write an affidavit in total support of his complaint against RUO Stasewich for depriving him of his breakfast. RUO Stasewich heard Jamerson. And RUO Stasewich told RUO Phillipson "it sound like Jamerson don't want a meal for lunch"... RUO Stasewich served lunch on c-wing and he made no attempt to serve Jamerson a meal for lunch. Jamerson [sic] request for his meal was to no avail. The deprivation constitutes a violation of Jamerson [sic] Eighth

---

[1] Defendants state that Plaintiff is seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. However, a review of Plaintiff's complaint shows that he is also seeking compensatory, punitive, and exemplary damages. (Docket #1, p. 45.)

>Amendment rights, and 14th Amendment, and PD 04.05.120, Section
>X, #9 of Segregation Standards.

[Def. Ex. A.]

>Sgt. T. Lee. Investigated the grievance and issued the following grievance response:
>
>I have interviewed all relevant parties. The Grievant was disruptive at the time trays were being passed. The Grievant was instructed by the officer to calm down and stop the disruptive behavior. Instead of complying with those instructions, the Grievant stated, "Fuck that tray." The Grievant himself refused the tray. This incident was well documented in the Special Housing Unit Records. Grievance denied.

[Def. Ex. A; also see Def. Ex. B, C and D.]

Next, Plaintiff contends in a civil rights complaint that Defendant Taylor spoke to him in a racially derogatory manner on September 12, 2006. In his September 22, 2006, grievance Plaintiff alleges that:

>Hostage- Jamerson #138940, an Afro-American, held in bondage at LMF, is submitting his grievance solely against Director Patricia L. Caruso, Warden David Bergh, Lt. Taylor, all three caucasians are acting under color of State law. This is a racial hate harassment complaint. On September 12, 2006, first shift, approximately 8:30 A.M. Lt. Taylor made a round in Birch-Unit on C-Wing. As he approached cell-132 occupied by Jamerson. Jamerson asked Lt. Taylor why he is not providing any supervision in Birch-Unit at meal time. He told Jamerson, "lay down nigger cause you're not getting any food to eat today. And be thankful you have water and a mattress to ly [sic] down. Your black retarded good for nothing ass don't need no food every day. And if I hear you crying about some food again, I'll have the Emergency Squad rush in that cell and kick your black ass. You understand Coon." Jamerson advised him of grieving. And he said that he's the boss. Jamerson has a right to be free from racial hate.

[Def. Ex. E.]

Captain A.L. Immel investigated the grievance complaint and issued the following response:

> Lt. Taylor was interviewed, he indicated that when talking to you he was professional and did not use any of the terms that you are claiming were used by him. He also stated that he never told you that he would have the emergency squad rush in you cell. No evidence was found to support your grievance in any manner, grievance denied.

[Def. Ex. E; also see Def. Ex. F].

Finally, Plaintiff alleges that Defendant Phillipson deprived him of his lunch tray on September 24, 2006, for no reason other than her racially motivated hatred. Plaintiff contends that Defendant Phillipson has a history of depriving black prisoners of their food trays and then claiming that the prisoner was masturbating in an attempt to cover up her acts. Upon investigation of Plaintiff's grievance, Sgt. T. Lee issued the following grievance response:

> I have attempted to interview all relevant parties. The Grievant would not respond to this respondent's attempt to interview him, he stayed mute. On 9/24/2006, RUO Phillipson did pass the lunch meal on C-wing. As she approached B-132, the Grievant was standing in the middle of the cell facing the cell door and masturbating. RUO Phillipson notified the prisoner that the behavior was inappropriate and she closed the window shutter. As she was passing the lunch trays, she opened the shutter to give the Grievant his food; the Grievant never made an attempt to cover-up or to come to the door properly dressed for his meal. RUO Philipson documented the Grievant's inappropriate behavior on the Special Housing Unit Record (CAJ-278) for the day. The Officer is more factual and concise with her recollection of the incident. The Grievant has a well documented history of this type of sexually deviant behavior directed toward female staff members. Grievance denied.

[Def. Ex. G; also see Def. Ex. B and C.]

Defendants Taylor, Phillipson, and Stasewich initially assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan*

*Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, \*\*1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[2] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

A state's sovereign immunity may be abrogated for the sole purpose of ending continuing violations of federal law by governing future conduct. Further, the record indicates that plaintiff has been transferred out of LMF and is now incarcerated at MBP. Therefore he is no longer under the control or custody of the defendants. In unreported opinions, the Sixth Circuit has repeatedly held that transfer to another prison facility moots prisoner injunctive and declaratory claims. *See for example Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. September 20, 1989); *see* also *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). These Sixth Circuit opinions contain only brief explanation of the reasoning

---

[2] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

supporting this rule. Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the result of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *For example see Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd,* 854 F.2d 162 (7th Cir. 1988). *See also O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-496.

In the present action, the possibility that Plaintiff will be subjected to the same alleged unconstitutional activity is too speculative to warrant injunctive relief. There has been no showing of a "reasonable expectation" nor a "demonstrated probability" that Plaintiff will be returned to LMF and be subjected to these allegedly unconstitutional conditions by the same defendants. Thus, there is no evidence of "immediate danger" of injury. Accordingly, in the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's requests for injunctive relief.

Defendants next claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies for the grievances regarding the alleged August 12, 2006, and September 24, 2006, meal deprivation claims against Defendants Phillipson and Stasewich.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532

(2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the

response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants attach a copy of the grievance that Plaintiff filed regarding the August 12, 2006, deprivation of his lunch tray to their brief. In the body of the grievance, Plaintiff names Defendants Stasewich and Phillipson and asserts that they deprived him of his meal tray in violation of Plaintiff's Eighth and Fourteenth Amendment rights. Plaintiff filed both step II and step III appeals. (Def. Ex. A.) Therefore, Plaintiff has satisfied the exhaustion requirement with regard to this claim.

Defendants also attach a copy of the grievance Plaintiff filed regarding the September 24, 2006, meal deprivation by Defendant Phillipson. In that grievance, Plaintiff asserted that Defendant Phillipson closed Plaintiff's window shutter and advised him that he would not be receiving a meal for lunch. Defendant Phillipson subsequently refused to give Plaintiff his meal tray. Plaintiff filed appeals at steps II and III. (Def. Ex. G.) Therefore, Plaintiff has satisfied the exhaustion requirement with regard to this claim.

9

Finally, Defendants state that they are entitled to summary judgment on the merits of Plaintiff's claims because there were legitimate, non-discriminatory reasons that Plaintiff did not receive his lunch trays on August 12, 2006, and September 24, 2006. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice requires strict scrutiny when it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).

"To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Township,* 470 F.3d 286, 298 (6th Cir.2006); *see also Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 341 (6th Cir.1990) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class."). In addition, an equal protection claim under the Fourteenth Amendment requires a state actor's intentional discrimination because of the plaintiff's membership in a protected class. *McCleskey v. Kemp,* 481 U.S. 279, 292 (1987); *Purisch v. Tennessee Tech. Univ.,* 76 F .3d 1414, 1424 (6th Cir.1996); *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 341 (6th Cir.1990) ( [t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class").

Defendants state that they are entitled to summary judgment because Plaintiff has failed to allege facts showing that he was treated differently than similarly situated persons on the basis of his race. Plaintiff merely asserts the ultimate conclusion that he was "racially denied" meals. He specifically asserts in his civil rights complaint that Defendants Phillipson and Stasewich personally "racially" denied him his meal trays on August 12, 2006; but vaguely asserts that it occurred "when he attempted to assist another black prisoner." (Docket #1,¶ 43). Plaintiff's conclusory allegations contradict the findings in the response to his step I grievance, that Plaintiff was creating a disturbance when lunch trays were being passed around, and that when Plaintiff was instructed to calm down, he responded "fuck that tray." (Def. Ex. A.) Defendant Phillipson's affidavit sets forth the same version of events as stated in the step I grievance response. (Def. Ex. B.)

With respect to the September 24, 2006, incident, Plaintiff alleges in his civil rights complaint that he was denied his lunch tray by Defendant Phillipson; and follows the statement with an averment that Phillipson has a "history" of depriving black inmates their meal trays and claiming the prisoner was masturbating. (Docket #1, ¶50). Plaintiff set forth no other evidence demonstrating such a history. Both instances of alleged meal deprivation in this case constituted legitimate, non-discriminatory reasons Plaintiff did not receive a meal tray on those days; specifically, his own disruptive behavior. The response to Plaintiff's grievance on this matter, Defendant Phillipson's affidavit, and the Special Housing Unit Record all indicate that Plaintiff was denied his tray because he was openly masturbating when trays were being passed out on the unit. (Def. Ex. B, C, and G.) In addition, the Special Housing Unit Record shows that Plaintiff was either exposing himself and / or openly masturbating on April 14, 2006, September 24, 2006, and September 29, 2006. (Def. Ex. C.) Therefore, in the opinion of the undersigned, there is not genuine issue of material fact that

Defendants Phillipson and Stasewich violated Plaintiff's equal protection rights with respect to the alleged August 12, 2006, and September 24, 2006, deprivations of his lunch tray.

Finally, Plaintiff's claims that on September 12, 2006, after he filed a grievance against Defendants Caruso, Bergh, and Taylor regarding the denial of meal trays, Defendant Taylor told him that he would not be getting any food that day, called him a nigger and a coon, and referred to his "black retarded good for nothing ass. Defendant denies speaking to Plaintiff or any other inmate in this fashion. (Def. Ex. F.) The Special Housing Unit Record indicates that Plaintiff refused his meal on September 12, 2006. (Def. Ex. C.) In the step I response, the respondent noted that Defendant Taylor had been interviewed and indicated that when talking to Plaintiff, Defendant Taylor was professional and did not use derogatory terms. According to the step II response to Plaintiff's grievance on this issue, between September 12, 2006, and October 11, 2006, Plaintiff did not receive meals on three separate occasions due to non-compliance on Plaintiff's part. Finally, the step III response stated that an investigation had affirmed the step I and II findings. (Def. Ex. E.) Plaintiff has failed to sustain his burden of proof in response to the evidence offered by Defendants in support of their motion for summary judgment.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances

two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' motion (docket #13) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated: August 20, 2010